STATE, Respondent, v. GROPPI, Appellant.*

No. State 38. Argued November 1, 1968.—Decided February 4, 1969.
(Also reported in 164 N. W. 2d 266.)

* Motion for rehearing denied, without costs, on April 1, 1969.

314

For the appellant there were briefs by *Thomas M. Jacobson* and *Allen L. Samson,* both of Milwaukee, and *Jack Greenberg, Michael Meltsner,* and *Haywood Burns,* all of New York, N. Y., and oral argument by *Mr. Jacobson.*

For the respondent the cause was argued by *Harold B. Jackson, Jr.,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *David J. Cannon,* district attorney.

HANLEY, J. The defendant presents the following issues on this appeal:

1. Is sec. 956.03 (3), Stats., unconstitutional either on its face or as applied in this case?

2. May a trial court quash a subpoena which has been properly issued and served upon a witness the defendant desired to call in his defense?

*Unconstitutionality of Sec. 956.03 (3), Stats.*

Appellant claims the change of venue statute is unconstitutional on several different grounds: First, that the statute, on its face, is a violation of due process as guaranteed by the Wisconsin and federal constitutions; second, that the face of the statute violates the equal protection clause of the federal constitution. And, finally, it is contended that the statute was unconstitutionally applied in this case. In all cases, the reason for the alleged unconstitutionality is the same, *i.e.,* that the change of venue based on community prejudice is limited to felony cases.

We think that there is a sufficient difference between a felony and a misdemeanor to warrant the distinction.

". . . In most cases the place of imprisonment is different; the statute of limitations is twice as long for a felony as a misdemeanor; one charged with a felony is entitled to a preliminary hearing; the stigma of a felony is greater; and under the repeater statute, more severe penalties are authorized for felonies than for misdemeanors. . . ." *State ex rel. Gaynon v. Krueger* (1966), 31 Wis. 2d 609, 620, 143 N. W. 2d 437.

Moreover, it would be extremely unusual for a community as a whole to prejudge the guilt of any person charged with a misdemeanor. Ordinarily community prejudice arises when a particularly horrendous crime has been perpetrated. These are the only crimes that receive widespread and prolonged attention from the news media. But the general public just does not become incensed at the commission of a misdemeanor.

The court also takes judicial notice of the vast number of misdemeanors that are prosecuted as opposed to felonies. As a matter of necessity, the prosecution of misdemeanors has been simplified as much as possible by the legislature. This is not because the legislature is not concerned with justice, but because society demands that efficiency in the administration of justice be given consideration along with absolute fairness.

This court faced a decision similar to the one in this case in deciding whether an indigent accused of a misdemeanor was entitled to the assistance of a court-appointed attorney in his defense. At that time the court stated:

"A basic concern of this court must be to strive for greater fairness in the administration of criminal justice. This contemplates protection of the innocent from wrongful conviction, and a concern for the poor as well as for the affluent. A correlative consideration, nevertheless, must be to protect society from burdens that, if intolerable, might impair the administration of justice. Achieving the proper equilibrium between these important

considerations inherently requires that standards be established, thus presenting a situation in which it is difficult to achieve an ideal result." *State ex rel. Plutshack v. H&SS Department* (1968), 37 Wis. 2d 713, 720, 155 N. W. 2d 549, 157 N. W. 2d 567.

The court decided in the *Plutshack Case* that counsel should be provided for all indigent defendants who were charged with a crime which was punishable by a maximum sentence of more than six months' imprisonment. This was determined to be a reasonable cutoff point.

It is also important to recognize that in deciding the *Plutshack Case,* the court was not faced with a statute which specifically denied the appointment of counsel to indigents charged with misdemeanors. On the contrary, the applicable statute, sec. 957.26, Stats.,[2] had recently been amended [3] so that counsel could be provided in misdemeanor cases. Thus the court was free to adopt the six-month cutoff.

However, in this case, the applicable statute specifies that a change of venue based on community prejudice shall only be permitted in felony cases. Were we free to adopt our own cutoff point, we would establish it at over six months, as we did in reference to the appointment of counsel. However, we are not willing to say that the cutoff point established by the legislature is necessarily arbitrary and capricious.

The court is aware that two other jurisdictions have considered whether a change of venue based on com-

---

[2] "957.26 **Counsel for indigent defendants charged with felony; advice by court.** (1) A person charged with a crime shall, at his initial appearance before a court or magistrate, be advised of his right to counsel and, that in any case where required by the United States or Wisconsin constitution, counsel, unless waived, will be appointed to represent him at county expense if he is financially unable to employ counsel."

[3] Ch. 519, Laws of 1965, amended sec. 957.26 (1). Previously that section provided for the appointment of counsel only when a defendant was charged with a felony.

munity prejudice can be limited to felony cases.[4] Both decided it could not be without violating the due process clause of the fourteenth amendment to the federal constitution. Those cases are not precedent for this court and their reasoning does not compel us to reach the same conclusion.[5]

The United States Supreme Court held in *Rideau v. Louisiana* (1963), 373 U. S. 723, 83 Sup. Ct. 1417, 10 L. Ed. 2d 663, that a denial of a change of venue, under the circumstances of that case,[6] amounted to a denial of due process. That case is distinguishable on two grounds. First, it involved a felony, as does every other case in the area of change of venue which has been dealt with by the supreme court. Second, the defendant put into the record his proof of community prejudice which was at least likely to influence the jury. No record of community prejudice was ever made in this case.

---

[4] *Pamplin v. Mason* (5th Cir. 1966), 364 Fed. 2d 1; *State ex rel. Ricco v. Biggs* (1953), 198 Or. 413, 255 Pac. 2d 1055.

[5] The United States Supreme Court recently considered whether a state could constitutionally deny a jury trial to persons accused of a misdemeanor. *Duncan v. Louisiana* (1968), 391 U. S. 145, 88 Sup. Ct. 1444, 20 L. Ed. 2d 491.

The court held that every person had a fundamental right to a jury trial even in state prosecutions if he was charged with a "serious" crime, whereas no such right existed if a person was charged with a "petty" offense. The court refused to draw a distinct line between a petty offense and a serious offense, but the majority did state that any crime punishable by two years' imprisonment, or more, was a serious crime. The court further indicated that, under federal law, a crime involving a maximum sentence of six months, or less, was a petty offense. No opinion was expressed as to the classification of those crimes which involved a maximum sentence of more than six months but less than two years.

In Wisconsin, no misdemeanor is punishable by more than one year of imprisonment.

[6] The circumstances in *Rideau, supra,* were extreme. A twenty-minute film and sound track of the defendant's being "interviewed"

Appellant contends that because his motion for change of venue was denied, he had no opportunity to make a record of the community prejudice. This is simply not true. Both the federal and state constitutions guarantee to every accused the right to a fair and impartial trial.[7] A verdict from a prejudiced jury is void [8] whether or not a change of venue or a continuance was requested.[9] On motions after verdict or on a petition for habeas corpus, a person convicted of either a misdemeanor or a felony can offer proof that he was denied his constitutional right of a fair and impartial trial.[10]

The right to a fair and impartial trial is not synonymous with a change of venue. The only connection between a change of venue and a fair and impartial trial is that the former is one method of insuring the latter.

by the sheriff was shown over television on three separate occasions. During the course of the interview, the defendant admitted robbery, kidnapping and murder. The supreme court decided, without examining the transcript of the *voir dire*, that due process required a trial before a jury drawn from a community of people who had not seen and heard the televised "interview."

[7] Art. I, sec. 7, Wisconsin Constitution:
"In all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial by an impartial jury . . . ."

Sixth amendment, United States Constitution:
"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

[8] "Petitioner's detention and sentence of death pursuant to the *void judgment* is in violation of the Constitution of the United States and he is therefore entitled to be freed therefrom. . . ." (Emphasis supplied.) *Irvin v. Dowd* (1961), 366 U. S. 717, 728, 81 Sup. Ct. 1639, 6 L. Ed. 2d 751.

[9] This seems to be the only logical conclusion following the decision in *Sheppard v. Maxwell* (1966), 384 U. S. 333, 86 Sup. Ct. 1507, 16 L. Ed. 2d 600. The verdict of the jury was set aside based on prejudice even though no motion for a change of venue or continuance was made.

[10] The express holding of *Irvin v. Dowd, supra,* seems to be that a statute which denies a change of venue is not unconstitutional, either on its face or in its application, so long as the statute is not relied upon to deny a person his right to a fair and impartial trial.

Other methods of insuring a fair trial are *voir dire* proceedings and continuance. [11]

The defendant here was not denied due process when his change of venue was denied because of the applicable statute. Should a rare case arise where community prejudice threatens to influence the verdict in a misdemeanor case, the defendant can rely on the antiseptic measures of continuance and *voir dire* proceedings. In the event that these measures are still not sufficient to provide an impartial jury, the verdict can be set aside after trial based on the denial of a fair and impartial trial.

If the defendant in the present case feels that he was denied a fair and impartial trial (no such claim has been made to this court), the issue can be raised and evidence can be presented on a motion for a new trial based on a denial of a fair and impartial trial. [12]

### *Quashing a Subpoena.*

Defendant also contends that it is unconstitutional to deny to a defendant in a criminal action the right to subpoena any witness even if the witness' testimony is admittedly irrelevant.

The sixth amendment to the United States Constitution and art. I, sec. 7, of the Wisconsin Constitution guarantee to a defendant in a criminal case the right "to have compulsory process" to obtain witnesses in his be-

[11] "The remedies in publicity cases are change of venue, continuance, and careful selection of a jury." *State v. Woodington* (1966), 31 Wis. 2d 151, 166, 142 N. W. 2d 810, 143 N. W. 2d 753.

[12] Sec. 958.06 (1), Stats., provides:

"Within *one year* after the trial and on motion of the defendant the court may grant a new trial . . . ." (Emphasis supplied.)

The trial in this case ended on February 9, 1968. Some motions after verdict were presented on February 12, 1968, and denied. It does not appear that the presentation of those motions would foreclose the presentation of a motion for a new trial based on an entirely different ground.

half. This right is now incorporated in the due process clause of the fourteenth amendment to the federal constitution and applies equally to the several states.[13] It is also worthy of note that there has been no attempt to limit this right to persons charged with a felony.[14]

In this case, the defendant subpoenaed the mayor of Milwaukee. After the subpoena issued, an assistant city attorney, representing the mayor, moved for an order to show cause why the subpoena should not be quashed. The day before the trial a hearing was held on that order. The attorney for the city argued that the mayor had no personal knowledge of any facts which would be material to the resisting arrest charge against Father Groppi. Counsel for the defendant contended that they hoped to establish by the mayor's testimony either that the proclamation was unconstitutional on its face or that it was unconstitutionally issued. The judge took the motion to quash under consideration until the next day.

The following morning, the defendant withdrew a motion to dismiss the charge based on the unconstitutionality of the proclamation because that issue was pending in the federal court and could best be determined there. The trial court then quashed the subpoena because the issue of the unconstitutionality of the proclamation had been withdrawn. The defendant insisted at that point, and during the trial, that he had a constitutional right to call the mayor.

The defendant has explained in his brief on this appeal why the testimony of the mayor was relevant to this case:

". . . had the defendant been able to demonstrate by the testimony of Mayor Maier that the ordinance under which he was initially arrested was illegally promulgated either because of the procedures used or because it was

[13] *Washington v. Texas* (1967), 388 U. S. 14, 87 Sup. Ct. 1920, 18 L. Ed. 2d 1019.

[14] Sec. 955.04, Stats., provides:

"Any defendant shall have compulsory process to compel the attendance of witnesses in his behalf."

unconstitutional or because it was applied unconstitutionally there can be no question but that the appellant could have legitimately challenged his arrest as illegal and unauthorized. . . ."

We first determine that a defendant does not have an unqualified right to subpoena witnesses. This right is no more absolute than any of the other rights guaranteed by the constitution.

It is readily apparent that a defendant suffers no constitutional deprivation when he is limited to subpoenaing witnesses who can offer relevant and material evidence on his behalf. The proposition is so apparent on its face that it is difficult to find legal citation to support it. However, at least one English case has considered this precise issue. In *King v. Baines* (1909), 1 K. B. 258, the defendants, who were demonstrating for women's suffrage, were arrested for breach of the peace and unlawful assembly. They subpoenaed Prime Minister Herbert Henry Asquith and Home Secretary Herbert John Gladstone to testify at their trial. The subpoenas were subsequently set aside upon proof that neither subpoenaed party could give any relevant testimony at the trial. The setting aside of the subpoenas was upheld on appeal.

We think a subpoena is properly quashed when a party is unable to give relevant evidence.

We also decide that the testimony which the defendant sought from Mayor Maier was immaterial to the resisting arrest charge. It is not necessary to decide whether that testimony would have been relevant if the constitutionality of the proclamation was in issue. That issue was specifically withdrawn from this case.

In the absence of some showing by the defendant that the witness was necessary for his defense, the quashing of the subpoena is not a violation of a defendant's right to compulsory process.

We conclude that sec. 956.03 (3), Stats., is constitutional and that the trial court's judgment of conviction and order of sentence were proper.

*By the Court.*—Judgment and order affirmed.

HALLOWS, C. J. (*concurring*). I concur in the result only of the majority opinion because I believe with the minority that an accused has a constitutional right to a fair trial in misdemeanor cases and to attain that end may have a change of venue if he shows community prejudice. The minority opinion well states the view that sec. 956.03 (3), Stats., is regulatory only of this basic right to a fair trial and is not exclusive by implication. The right to a change of venue to secure a fair trial is consistent with my belief that an accused has a constitutional right to an attorney in all misdemeanor cases, which was expressed in *Sparkman v. State* (1965), 27 Wis. 2d 92, 102, 133 N. W. 2d 776, and again in the dissent in *State ex rel. Plutshack v. H&SS Department* (1968), 37 Wis. 2d 713, 727, 155 N. W. 2d 549, 157 N. W. 2d 567.

I differ with the minority in its remedy in this case. To these facts I would apply the harmless-error rule as stated in *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, certiorari denied, 390 U. S. 959, 88 Sup. Ct. 1056, 19 L. Ed. 2d 1155. Not every violation of a constitutional right requires a reversal or a new trial. Prejudice resulting from error or the denial of a constitutional right must be shown. In the instant case, the defendant had no difficulty in selecting and obtaining a satisfactory jury and one which on the record he does not claim was biased or unfair.

The exercise of the constitutional right to a change of venue on the ground of community prejudice is a means to secure an unprejudiced and fair jury so that a fair trial may be assured. If such a saturation of prejudice exists in a community from which the jury is drawn so as to make it difficult to select and obtain an impartial jury, then it is better to change the venue of the case than to waste time attempting to find an unprejudiced jury. But a juror's knowledge of events is to be distinguished from prejudice or predetermined opinion. One may have knowledge without prejudice. The members of a jury

may be informed without the jury being prejudiced. I think also that community prejudice has little or no effect on a witness. The argument that a witness will testify differently in one county than he will in another is unconvincing. No matter where the witness testifies, he must live in the community from which he comes.

On the facts of this case, I see no reason for a reversal.

HEFFERNAN, J. (*dissenting*). I respectfully dissent from the opinion of the court insofar as it holds sec. 956.03, Stats., prohibits a change of venue in misdemeanor cases and that such legislative prohibition is constitutional.

To understand what the majority has done, it is necessary to review the facts. It is crystal clear from the record that the defendant moved for a change of venue on the basis of community prejudice. Such prejudice was alleged in the underlying affidavits supporting the motion. The defendant's trial counsel also asked that the court take judicial notice of the "massive coverage by all news media in this community of the activities of this defendant . . . or, in the alternative, that the defendant be permitted to offer proof of the nature and extent thereof, its effect upon this community and on the right of defendant to an impartial jury trial." This motion was denied in its entirety. The reason for such a denial, including the reason for the refusal to hear evidence of prejudice, is made clear by the remarks of the trial judge following the denial of the motion.

Counsel asked if the court was denying the motion "because the statute will not permit a change of venue on the grounds of community prejudice . . . ." The court replied, "No, I'm denying the motion . . . because this is a misdemeanor case and not a felony. And the Wisconsin Statute does not provide for a change of venue in a misdemeanor matter."

It is thus apparent that the judge refused to hear evidence on community prejudice solely because he concluded

that the statute gave him no jurisdiction to order a change of venue even if community prejudice were shown.

This, I conclude, is a clear error of law, and the statute as so construed was applied unconstitutionally. The statute is procedural only. It merely specifies the duty of the judge when prejudice is apparent and the defendant is charged with a felony. It is silent upon the duty of a judge in the event one charged with a misdemeanor asks for a change of venue because of community prejudice. The prohibition that the trial judge found, at least by implication, in the statute is not apparent to this writer.

We have heretofore held, in *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155, overruling, *sub silentio*, *State ex rel. Carpenter v. Backus* (1917), 165 Wis. 179, 161 N. W. 759, to the contrary, that a change of venue for community prejudice is a constitutional right independent of the legislative procedural implementation. In *Nutley*, page 566, we pointed out that the portion of sec. 956.03 (3), Stats., providing, "Only one change may be granted under this subsection," was subject to the due process limitations of the fourteenth amendment to the United States Constitution.

In effect, this court recognized, at least in a felony case, that the power of a court to order a change of venue arose not from the statute but from its inherent power to act to assure a fair trial, and, as required, by the fourteenth amendment.

Are there any reasons why this constitutional assurance of a fair trial by the device of change of venue should be available only to one charged with a felony and not to an alleged misdemeanant?

The majority opinion concludes that it is just and proper to afford fewer constitutional guarantees of fairness to a misdemeanant than to a felon. On the face of it, this proposition runs counter to all principles of Anglo-American jurisprudence; however, factual distinctions, it is contended, make it fair to afford fewer protections to one charged with a misdemeanor. It is asserted in the

opinion of the majority of the court that the penalties are more severe in the case of felonies. This is, of course, true, but it is a fact entirely irrelevant to the issue. It is, in essence, an assertion that an unfairness that results in only a small sentence is of such a minor consequence as to be *de minimis*. The mere statement of the proposition is its own refutation. Concededly, the legislature has seen fit to *confer* additional safeguards to defendants accused of major crimes (preliminary hearing, *e.g.*) ; however, it is powerless to reduce the minimum safeguards of fairness that are assured by both the Wisconsin and United States Constitutions to all criminal defendants.

The opinion of the court also asserts that community prejudice is not aroused by the commission of a misdemeanor and that, therefore, a change of venue is needless. The simple answer to this proposition is that if there is no community prejudice, it is within the discretion of the trial judge to deny a change of venue. This determination is dependent upon the facts as they subjectively appear and not upon the objective nature of the crime or whether it is labeled a felony or a misdemeanor. The identity of the defendant and his image in the community is also relevant and may be a determining factor in whether or not there is community prejudice, irrespective of the nature or seriousness of the crime charged.[1] To

---

[1] The attorney general in his addendum to the district attorney's brief acknowledged that, "Appellant is a controversial figure, but not only in Milwaukee county." While this statement was made by the attorney general to show that a trial in another county might not result in a trial free from prejudice, it is equally probative of the assertion that the defendant could not have received a fair trial anywhere in the state. This, however, is no reason why a change of venue should not have been granted, for under *Nutley, supra*, this court has decided that the defendant is not remediless after one change of venue. If it developed that a fair trial could have been held nowhere in the state, a motion for continuance would then have been appropriate. The first obligation of the trial court was to consider a change of venue so the defendant could be speedily tried.

say that the public is not prejudiced or enraged by the commission of a misdemeanor begs the question. That is precisely what a hearing for a change of venue is intended to determine, and this is what the defendant herein sought to prove. For this court to decree that prejudice will henceforth not exist in a trial for a misdemeanor is reminiscent of King Canute's edict to hold back the tides.

It is, of course, true that it will be only the unusual and infrequent misdemeanor cases that will become a cause *celebre* and arouse popular passions. Granting the premise, on which the majority opinion is in part based, that there will be few misdemeanors that will arouse the emotions of the public, how can the rare case so clog the courts with motions for change of venue that the efficient and expeditious disposition of criminal cases will be in jeopardy. The majority opinion's fears are of a bogeyman of court congestion which its own reasoning shows to be without foundation. Moreover, there is no reason why this court should assume that motions for change of place of trial will be abused or that our courts are so supine as to tolerate such abuse.

While it may be conceded that procedurally it is within the legislature's power to adopt more expeditious methods of handling misdemeanors than felonies, it may not do so if constitutional rights are thereby encroached upon. The legislature may grant the right to a preliminary hearing to a felon, but not to a misdemeanant, but this right is statutory not constitutional. For example, it cannot, under the aegis of greater efficiency in the administration of justice, deny misdemeanants the right to jury trial guaranteed by the Wisconsin Constitution. While efficiency and economy are of great significance in cases where the courts are free to act one way or the other, they have no place in the situation now before us, where this court, as well as the legislature, is answerable to the constitution.

The recent United States Supreme Court decision, *Duncan v. Louisiana* (1968), 391 U. S. 145, 88 Sup. Ct.

1444, 20 L. Ed. 2d 491, pointed out that under the sixth amendment and the fourteenth amendment to the United States Constitution petty offenses could be tried before a judge only. This decision, of course, does not obviate the necessity for a jury trial for misdemeanors in a state like Wisconsin, where a jury trial is available to all defendants. *Duncan,* however, makes it crystal clear that a trial, before whomsoever held, must be fair. Mr. Justice HARLAN, although dissenting in *Duncan* and agreeing that a state by its own constitution should be able to determine the necessity of a jury trial, stated there were nevertheless certain prerequisites to a system of ordered liberty, one of them being a fair trial. He said, "I should suppose it obviously fundamental to fairness that a 'jury' means an 'impartial jury.'" (pp. 181, 182.)

In the instant case, a jury is guaranteed by the Wisconsin Constitution, and *Duncan* makes it clear that a jury must be impartial. A litigant is constitutionally entitled to invoke the device of change of venue to determine whether or not a trial may be had free from the contamination of community prejudice. Where the trial of a misdemeanant is before a judge, under Wisconsin law he may file an affidavit of prejudice if he thinks it necessary to assure a fair trial. He should not have a lesser right to a fair and impartial trial if he invokes his constitutional prerogative of trial by jury.

Nor is *State ex rel. Plutshack v. H&SS Department* (1968), 37 Wis. 2d 713, 155 N. W. 2d 549, 157 N. W. 2d 567, relevant to this case. Contrary to the assertion of the majority opinion, this court, therein, was not influenced or controlled by sec. 957.26, Stats. It was controlled by the rulings of the United States Supreme Court which have been interpreted to mean that there shall be counsel whenever a "substantial sentence" may be imposed. The opinion of the court in *Plutshack* was influenced by legislation only to the extent that we concluded that congressional legislation (Criminal Justice Act of 1964) was declaratory of constitutional requirements.

In the instant case we have elevated the legislature's enactment of sec. 956.03, Stats., to the status of a limitation on the constitutional rights of citizens accused of crime. To do so is, I believe, a misinterpretation of a statute the legislature intended to be procedural only and constitutes an abdication of a constitutional responsibility of this court.

We are herein in no way bound or guided, as we said we were in *Plutshack,* by legislation that appears to us to be declaratory of a proper constitutional standard already found by the Supreme Court of the United States. In the instant case what the legislature had to say about change of venue in felony cases is irrelevant to a constitutional right of an alleged misdemeanant.

This writer is of the opinion that the trial court and the majority of this court interpreted the statute in such a way as to deprive misdemeanants of important constitutional rights. In *State ex rel. Ricco v. Biggs* (1953), 198 Or. 413, 255 Pac. 2d 1055, the Oregon Supreme Court, faced with a similar statute, pointed out that such an interpretation violated the Oregon constitutional guaranty of a fair trial (similar to Wisconsin's), as well as the due process clause of the fourteenth amendment. That court pointed out, as does this dissent, that the legislative enactment does not govern whether a misdemeanant is entitled to a change of venue, for the right to a changed place of trial depends not upon legislative consent but upon the constitutional right of fair trial.

It is the opinion of this writer that the inherent power of a court to order a change of venue for community prejudice is beyond question.

This writer would also conclude that in any criminal case a court of justice has the inherent duty, where the question is raised, to inquire into the matter of community prejudice and to hold a hearing in order to exercise its discretion in respect thereto. This duty is constitutional, not statutory, and in proper circumstances should be exercised sua sponte.

Nor can I agree with the majority opinion's conclusion that even though a change of venue could or should have been granted, a fair trial is still assured by the procedures of the *voir dire* and motions after verdict.

This is hardly an argument for efficient judicial administration for if an atmosphere of prejudice or unfairness can be detected prior to trial, it is folly to spend the public's money on a trial that will be set aside.

No doubt, motions after verdict are useful safety devices to correct error that perhaps has already occurred, but the goal of the proper administration of justice is the avoidance of error. The device of change of venue seeks the avoidance of error.

Moreover, the test of community prejudice is not whether an impartial jury can or cannot be impaneled but whether there is a "reasonable likelihood" that community prejudice exists. *Sheppard v. Maxwell* (1966), 384 U. S. 333, 86 Sup. Ct. 1507, 16 L. Ed. 2d 600.

The American Bar Association Advisory Committee on Fair Trial and Free Press at pages 126, 127, and 128 discussed the efficacy of the *voir dire* as a guaranty of a fair trial:

"It has in many jurisdictions been common practice for denial of such a motion to be sustained if a jury meeting prevailing standards could be obtained. There are two principal difficulties with this approach. First, many existing standards of acceptability tolerate considerable knowledge of the case and even an opinion on the merits on the part of the prospective juror. And even under a more restrictive standard, there will remain the problem of obtaining accurate answers on *voir dire*—is the juror consciously or subconsciously harboring prejudice against the accused resulting from widespread news coverage in the community? Thus if change of venue and continuance are to be of value, they should not turn on the results of the *voir dire;* rather they should constitute independent remedies designed to assure fair trial when news coverage has raised substantial doubts about the effectiveness of the *voir dire* standing alone.

"The second difficulty is that when disposition of a motion for change of venue or continuance turns on the results of the *voir dire*, defense counsel may be placed in an extremely difficult position. Knowing conditions in the community, he may be more inclined to accept a particular juror, even one who has expressed an opinion, than to take his chances with other, less desirable jurors who may be waiting in the wings. And yet to make an adequate record for appellate review, he must object as much as possible, and use up his peremptory challenges as well. This dilemma seems both unnecessary and undesirable. . . .

"The suggestion of some courts that . . . [failure to exhaust all peremptory challenges] amounts to a waiver [of a right to transfer or continuance] seems to require the defendant to take unnecessary risks. If the defendant has satisfied the criterion for the granting of relief, it should not matter that he . . . has failed to use his peremptory challenges, perhaps because he prefers the ills he has to others he has not yet seen."

In *State v. Nutley, supra,* pages 565, 566, this court accepted the conclusion that a *voir dire* does not necessarily assure a trial free from the contamination of community prejudice:

"The United States supreme court has held that even if a defendant has examined prospective jurors at length during a *voir dire,* and even if the jurors state that they will evaluate the issues only on the evidence presented during the trial, a defendant may still be denied a fair trial if prejudicial pretrial publicity is of such quantitative and qualitative magnitude that it is probable that the jurors predetermined the issue despite their protestations to the contrary. This rule of Fourteenth amendment due process is applicable even though the defendant may have received one change of venue, pursuant to a state statute similar to sec. 956.03, Stats."

True, this court has in numerous cases looked to the *voir dire* to determine that a trial was free from the taint of prejudice. This technique, while efficacious in some cases, is directed primarily to the question of whether a trial judge abused his *discretion* in determining that the

prejudice alleged or proved was not of such a nature as to prevent a fair trial. Here, abuse of discretion is not in question. The trial judge here relied upon his interpretation of a statute and concluded that he was precluded by law from granting a change of venue. Discretion was not exercised. Hence, the error was one of law and the usual *voir dire* cases are not directed to the issue raised herein.

*Mason v. Pamplin* (D. C. Tex. 1964), 232 Fed. Supp. 539, 540, 541, 542, 543 (affirmed *Pamplin v. Mason* (5th Cir. 1966), 364 Fed. 2d 1), a case involving the right of a change of venue in a misdemeanor case where the Texas statute referred only to felonies, stated:

"The record reflects that the prospective jurors, who apparently qualified as a group, stated that they did not know petitioner; that they had not formed any opinions in the case; and that they had no prejudices against the Negro race, or against a Negro acting as counsel for petitioner. No testimony on this question, other than the sworn statement of petitioner's counsel, was offered at the hearing on the motion for new trial. . . .

"Whatever doubt may have existed prior to 1960 with respect to the inherent right of an individual to a change of venue, if he demands a jury trial, and it is made to appear that in the county where the prosecution is begun an impartial jury cannot be impaneled, was dispelled by the Supreme Court in Irvin v. Dowd, 366 U. S. 717 . . . , when it recognized the proposition that a transfer may become a *necessity*, depending upon 'the totality of the surrounding facts.' Such 'totality' cannot be achieved if the court is precluded by law from hearing any competent evidence which may be offered before, during or after trial for the purpose of showing one's inability to obtain a fair and impartial trial in a particular county. . . .

"The hearing on the change of venue is the first and most important step in ascertaining whether or not the accused can receive a fair and impartial trial in the county in which the prosecution is pending. The void which is left when the initial hearing is dispensed with could hardly be filled in a misdemeanor case, any more than it could in a felony case, by the subsequent *voir dire* examination of prospective jurors in a group, or by producing

at a hearing on a motion for new trial testimony the Court has previously refused to hear. . . .

"If the allegations made by [petitioner] had been found to be true [at a venue hearing], he would have been entitled to a change of venue, irrespective of the fact that the jurors themselves as a group indicated that they had no prejudices. As the Supreme Court said in *Dowd:* 'No doubt each juror was sincere when he said that he would be fair and impartial to petitioner, but the psychological impact requiring such a declaration before one's fellows is often its father.' 366 U. S. 717. . . ."

The denial of the defendant's motion, which in the alternative asked for a hearing on community prejudice, denied the defendant (contrary to the assertion of the majority opinion) an opportunity "to make a record of community prejudice." This is true because the judge made it clear that, in the case of a misdemeanor, community prejudice was irrelevant to a change of venue— there was just no statutory authority for such change. In motions after verdict defendant asked for a new trial on the ground, among others, that the court erred in denying the motion for change of venue on the assumption that the statute applied only to felony cases. This motion was again denied. The defendant also asked for a new trial on the ground that the one accorded him was unfair.

The defendant's motion was denied without hearing or explanation. It is apparent that the trial judge, relying on his interpretation of the law, refused to look to the alleged facts of community prejudice, and afforded the defendant no opportunity to make a record.

I would reverse the judgment of the circuit court and order a new trial, directing the trial court that, in the event a motion for change of venue is made, to exercise its discretion to determine whether or not the facts adduced at hearing warrant the granting of a change of venue.

I am authorized to state that Mr. Justice WILKIE joins in this dissent.