## GROPPI *v.* WISCONSIN

No. 26. ·Argued December 7, 1970—
Decided January 25, 1971

STEWART, J., delivered the opinion of the Court, in which DOUGLAS, HARLAN, BRENNAN, WHITE, and MARSHALL, JJ., joined. BLACK-MUN, J., filed a concurring·opinion, in which BURGER, C. J., joined, *post,* ·p. 512. BLACK, J., filed a dissenting opinion, *post,* p. 515.

*Elizabeth B. Dubois* argued the cause for appellant. With her on the briefs were *Jack·Greenberg, Michael Meltsner, Anthony G. Amsterdam, Thomas M. Jacobson,* and *Robert E. Sutton.*

*Sverre O. Tinglum,* Assistant Attorney General of Wisconsin, argued the cause for appellee. With him on the brief were *Robert W. Warren,* Attorney General, and *Roy G. Mita,* Assistant Attorney General.

MR.·JUSTICE STEWART delivered .the opinion of the Court.

On. August 31, 1967, during a period of civil disturbances in Milwaukee, Wisconsin, the appellant,· a Roman Catholic priest, was arrested in that ·city on a charge of resisting arrest. Under Wisconsin law that offense is a misdemeanor, punishable by a fine of not more than $500 or·imprisonment in the county jail for not more than

one year, or both.[1] After a series of continuances, the appellant was brought to trial before a jury in a Milwaukee County court on February 8, 1968. The first morning of the trial was occupied with qualifying the jurors, during the course of which the appellant exhausted all of his peremptory challenges.[2] The trial then proceeded, and at its conclusion the jury convicted the appellant as charged.

Prior to the trial, counsel for the appellant filed a motion for a change of venue from Milwaukee County "to a county where community prejudice against this defendant does not exist and where an impartial jury trial can be had." The motion asked the court to take judicial notice of "the massive coverage by all news media in this community of the activities of this defendant," or, in the alternative, that "the defendant be permitted to offer proof of the nature and extent thereof, its effect upon this community and on the right of defendant to an impartial jury trial." The trial judge denied the motion, making clear that his ruling was based exclusively on his view that Wisconsin law did not permit a change of venue in misdemeanor cases.[3]

On appeal, the Supreme Court of Wisconsin affirmed the conviction. 41 Wis. 2d 312, 164 N. W. 2d 266. It

---

[1] "Whoever knowingly resists or obstructs an officer while such officer is doing any act in his official capacity and with lawful authority, may be fined not more than $500 or imprisoned not more than one year in county jail or both." Wis. Stat. § 946.41 (1) (1967).

[2] Apparently no transcript was made of the *voir dire* proceedings.

[3] The court: "So, therefore, the change of venue as asked for in the motion for a change of venue will be denied; it not being provided for in the Wisconsin Statutes. . . . No, I'm denying the motion for a change of venue because this is a misdemeanor case and not a felony. And the Wisconsin Statute does not provide for a change of venue in a misdemeanor matter."

held that the trial judge had been correct in his understanding that a Wisconsin statute foreclosed the possibility of a change of venue in a misdemeanor prosecution.[4] It further held that this state law was constitutionally valid, pointing out that "it would be extremely unusual for a community as a whole to prejudge the guilt of any person charged with a misdemeanor." 41 Wis. 2d, at 317, 164 N. W. 2d, at 268. The court also noted that a defendant in a Wisconsin misdemeanor prosecution has a right to ask for continuances and to challenge prospective jurors on *voir dire,* and if "these measures are still not sufficient to provide an impartial jury, the verdict can be set aside after trial based on the denial of a fair and impartial trial." 41 Wis. 2d, at 321, 164 N. W. 2d, at 270. Two members of the court dissented, believing that the state statute did not absolutely forbid a change of venue in a misdemeanor prosecution, and that if the statute did contain such a prohibition it was constitutionally invalid. 41 Wis. 2d, at 325, 164 N. W. 2d, at 272.

This appeal followed, and we noted probable jurisdiction. 398 U. S. 957. As the case reaches us we must, of course, accept the construction that the Supreme Court of Wisconsin has put upon the state statute. *E. g., Kingsley Pictures Corp.* v. *Regents,* 360 U. S. 684, 688. The question before us, therefore, goes to the constitu-

---

[4] The relevant statute in effect at the time of the appellant's trial was Wis. Stat. § 956.03 (3) (1967), which provided:

"If a defendant who is charged with a felony files his affidavit that an impartial trial cannot be had in the county, the court may change the venue of the action to any county where an impartial trial can be had. Only one change may be granted under this subsection."

Wis. Stat. § 971.22, effective July 1, 1970, now permits a change of venue in all criminal cases. See Wis. Laws 1969, c. 255, p. 650.

tionality of a state law that categorically prevents a change of venue for a criminal jury trial, regardless of the extent of local prejudice against the defendant, on the sole ground that the charge against him is labeled a misdemeanor.[5] We hold that this question was answered correctly by the dissenting justices in the Supreme Court of Wisconsin.[6]

The issue in this case is not whether the Fourteenth Amendment requires a State to accord a jury trial to a defendant on a charge such as the appellant faced here.[7] The issue concerns, rather, the nature of the jury trial that the Fourteenth Amendment commands, when trial by jury is what the State has purported to accord.[8] We had occasion to consider this precise question almost 10 years ago in *Irvin* v. *Dowd*, 366 U. S. 717. There we found that an Indiana conviction could not constitutionally stand because the jury had been infected by com-

---

[5] We reject the suggestion that the appellant is not in a position to attack the statute because he made an insufficient showing of community prejudice. His motion for a change of venue explicitly asked in the alternative that he be permitted to "offer proof" of the nature and extent of the local prejudice against him. His motion was denied in its entirety, thus foreclosing any opportunity to produce evidence of a prejudiced community. The trial court's ruling was, of course, wholly consistent with its view that it was powerless to grant a change of venue under Wisconsin law, regardless of what showing of local prejudice might have been made.

[6] Accord, *Pamplin* v. *Mason*, 364 F. 2d 1 (CA5); *State ex rel. Ricco* v. *Biggs*, 198 Ore. 413, 255 P. 2d 1055.

[7] That question was answered affirmatively in *Baldwin* v. *New York*, 399 U. S. 66.

[8] Wisconsin grants a right to trial by jury in all misdemeanor cases. See *State ex rel. Murphy* v. *Voss*, 34 Wis. 2d 501, 505, 149 N. W. 2d 595, 597; *State ex rel. Sauk County District Attorney* v. *Gollmar*, 32 Wis. 2d 406, 410, 145 N. W. 2d 670, 672.

munity prejudice before the trial had commenced. What the Court said in that case is wholly relevant here:

> "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. *In re Oliver,* 333 U. S. 257; *Tumey* v. *Ohio,* 273 U. S. 510. 'A fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison,* 349 U. S. 133, 136. In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' Co. Litt. 155b. His verdict must be based upon the evidence developed at the trial. Cf. *Thompson* v. *City of Louisville,* 362 U. S. 199. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 . . . ." 366 U. S., at 722.

There are many ways to try to assure the kind of impartial jury that the Fourteenth Amendment guarantees.[9] In *Sheppard* v. *Maxwell,* 384 U. S. 333, the Court enumerated many of the procedures available, particularly in the context of a jury threatened by the poisonous influence of prejudicial publicity during the course of the trial itself. 384 U. S., at 357–363. Here we are concerned with the methods available to assure an impartial jury in a situation where, because of prejudicial publicity

---

[9] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . an *impartial* jury . . . ." (Emphasis added.)

or for some other reason, the community from which the jury is to be drawn may already be permeated with hostility toward the defendant. The problem is an ancient one. Mr. Justice Holmes stated no more than a commonplace when, two generations ago, he noted that "[a]ny judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere." *Frank v. Mangum,* 237 U. S. 309, 349 (dissenting opinion).

One way to try to meet the problem is to grant a continuance of the trial in the hope that in the course of time. the fires of prejudice will cool. But this hope may not be realized, and continuances, particularly if they are repeated, work against the important values implicit in the constitutional guarantee of a speedy trial.[10]  Another way is to provide a method of jury qualification that will promote, through the exercise of challenges to the venire—peremptory and for cause—the exclusion of prospective jurors infected with the prejudice of the community from which they come. But this protection, as *Irvin v. Dowd, supra,* shows, is not always adequate to effectuate the constitutional guarantee.[11]

On at least one occasion this Court has explicitly held that only a change of venue was constitutionally sufficient to assure the kind of impartial jury that is guaranteed by the Fourteenth Amendment. That was in the case of *Rideau v. Louisiana,* 373 U. S. 723. We held that "it was a denial of due process of law to refuse the request for a change of venue, after the people of Calcasieu Parish had been exposed repeatedly and in depth" to the preju-

---

[10] See *Klopfer v. North Carolina,* 386 U. S. 213; *Smith v. Hooey,* 393 U. S. 374; *Dickey v. Florida,* 398 U. S. 30; *id.,* at 39 (BRENNAN, J., concurring).

[11] See generally Broeder, Voir Dire Examinations: An Empirical Study, 38 S. Cal. L. Rev. 503 (1965).

dicial pretrial publicity there involved. 373 .U. S., at 726. *Rideau* was not decided until 1963, but its message echoes more than 200 years of human experience in the endless quest for the fair administration of criminal justice.[12]

It is doubtless true, as the Supreme Court of Wisconsin said, that community prejudice is not often aroused against a man accused only of a misdemeanor. But under the Constitution a defendant must be given an opportunity to show that a change of venue *is* required in *his* case. The Wisconsin statute wholly denied that opportunity to the appellant.

---

[12] See *Rex* v. *Harris,* 3 Burr. 1330, 1333, 97 Eng. Rep. 858, 859 (K. B. 1762): "Notwithstanding the locality of some sorts of actions, or of informations for misdemeanors, if the matter can not be tried at all, or can not be fairly and impartially tried in the proper county, it shall be tried in the next adjoining county." (Lord Mansfield.)

See also *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 178–179,.94 N. E. 369, 376–377 (1911):

"This review demonstrates that the great weight of authority supports the view that courts, which by statute or custom possess a jurisdiction like that of the Kings Bench before our revolution, have the right to change the place of trial, when justice requires it, to a county where an impartial trial may be had.

". . . There can be no justice in a trial by jurors inflamed by passion, warped by prejudice, awed by violence, menaced by the virulence of public opinion or manifestly biased by any influences operating either openly or insidiously to such an extent as to poison the judgment and prevent the freedom of fair action. Justice cannot be assured in a trial where other considerations enter the minds of those who are to decide than the single desire to ascertain and declare the truth according to the law and the evidence. A court of general jurisdiction ought not to be left powerless under the law to do within reason all that the conditions of society and human nature permit to provide an unprejudiced panel for a jury trial."

See also, *e. g., State* v. *Albee,* 61 N. H. 423, 60 Am. Rep. 325 (1881).

Accordingly, the judgment is vacated, and the case is remanded to the Supreme Court of Wisconsin for further proceedings not inconsistent with this opinion.[13]

*It is so ordered.*

MR. JUSTICE BLACKMUN, whom THE CHIEF JUSTICE joins, concurring.

Although I agree in large part with the reasoning of MR. JUSTICE BLACK's opinion in dissent, I nevertheless join in the Court's judgment that this conviction of Father Groppi must be vacated and the case remanded for further proceedings. In so doing, however, I feel compelled to make the following observations:

1. The primary issue, it seems to me, is whether the appellant (hereafter defendant) received a fair trial, not whether, as a matter of abstract constitutional law, he was entitled to a change of venue in a Wisconsin misdemeanor prosecution in 1968.

2. A fair trial, of course, is fundamental. No one disputes that. As the Court points out in footnote 12 of its opinion, this principle of English-American jurisprudence was evolved prior to the embodiment of the treasured concepts of an impartial jury in the Sixth Amendment and of due process in the Fifth and Fourteenth.

3. If the defense believes that a fair trial is unlikely because of community prejudice, that is a matter for proof by the defense, and, when proved, should constitutionally warrant, and indeed demand, a change of venue in any case, whether the prosecution be for a felony or for a misdemeanor.

4. Thus, I find myself in agreement with the two dissenting Justices of the Supreme Court of Wisconsin and with that court's Chief Justice, in concurring in the

---

[13] Whether corrective relief can be afforded the appellant short of a new trial will be for the Wisconsin courts to determine in the first instance. Cf. *Coleman* v. *Alabama,* 399 U. S. 1, 10–11.

result of the majority opinion, when the three conclude, 41 Wis. 2d 312, 324, 325, 164 N. W. 2d 266, 272, that a change of venue in a misdemeanor case is constitutionally required upon a proper showing.

5. I am at a loss to understand how a change of venue statute expressed in positive but permissive terms and specifically applicable to felony cases can be construed to embody a negative prohibition for misdemeanor cases, particularly with regard to so fundamental a right as the right to have a trial untainted by community prejudice. The statutory interpretation so made is all the more unexpected because it raises an otherwise quite avoidable constitutional issue.

6. But the Wisconsin court has spoken and, by majority vote, has construed the state statute then in effect in that very way. Construction of the statute is the state court's task. It is not our task. And we are bound by the Wisconsin court's decision as to the meaning and application of a Wisconsin statute.

7. The record before us leaves much to be desired. It discloses no formal offer of proof of the kind customarily made. It contains no transcript of the *voir dire*, and thus there is no way in which we or anyone else can evaluate from the *voir dire* the presence, or the possibility of the presence, of actual prejudice in any member of the jury panel. Although a "motion after verdict" was made and although it referred to "the ground of community prejudice," the motion does not in so many words assert that this defendant actually was denied a fair and impartial trial. Neither is the motion supported by affidavits incorporating the claimed prejudicial media reports.

8. The jury appears to have been selected expeditiously and without difficulty during a single morning. And we note what appears to be conflicting evidence in the record as to Father Groppi's behavior at the point of his arrest, evidence which would support a fair jury's conclusion

either way, that is, that he did resist arrest or that he did not resist arrest, within the meaning and application of the Wisconsin statute. On balance, in the face of what may be regarded as a ruling by the trial court that no showing, however persuasive, of community prejudice and its effect upon the jury actually selected could command a change of venue in this misdemeanor case, I am content to join in the vacation of the judgment of conviction and in the remand in order to allow the defendant to attempt to make his proof.

9. I would stress, however, more than by the three-line final footnote which may be lost to the reader who is more interested in the notoriety of the case than in what we are doing today by way of specific ruling, that this remand does not *necessarily* mean a new trial for Father Groppi, and freedom from his conviction on the charge of resisting arrest. The defendant is to have his opportunity to demonstrate prejudice and the likelihood of an unfair trial. If he fails in that quest, or if he now refuses to undertake it, the judgment of conviction may be reinstated. If he does not fail, then of course the conviction falls and the State is remitted to its choice between a new trial or a dismissal of the charge.

10. Finally, I doubt very much whether this rather unimportant case, but an admittedly sensitive one because of the identity of the defendant and the means he has selected to make his protests known, at all approaches the circumstances and the offensive character of what this Court condemned in *Sheppard* v. *Maxwell,* 384 U. S. 333 (1966), in *Rideau* v. *Louisiana,* 373 U. S. 723 (1963), and in *Irvin* v. *Dowd,* 366 U. S. 717 (1961), cited in the Court's opinion. Nevertheless, unfairness anywhere, in small cases as well as in large, is abhorred, is to be ferreted out, and is to be eliminated. Despite the unsatisfactory record, this defendant must have his opportunity to demonstrate what he alleges.

MR. JUSTICE BLACK, dissenting.

I dissent from the Court's vacation of the judgment of conviction. I agree, of course, that this appellant is entitled to trial before an impartial jury. This right is guaranteed by the Sixth Amendment and made binding on the States by the Fourteenth. *Ante,* at 509. Cf. *Parker* v. *Gladden,* 385 U. S. 363 (1966); see also *Adamson* v. *California,* 332 U. S. 46, 68 (1947) (BLACK, J., dissenting).

As the Wisconsin Supreme Court suggested, the right to trial before an impartial jury can be protected in many ways: by granting a continuance until community passions subside; by challenging jurors for cause and by peremptory challenges during *voir dire* proceedings. But it simply cannot be said that the right to trial by an impartial jury must necessarily include a right to change of venue. It may or may not be wiser to implement the Sixth Amendment by a change of venue provision, but in my view, the Constitution does not require it. If the usual devices for protection of the Sixth Amendment right to trial by an impartial jury are insufficient, the defendant can always be given a new trial on the ground of jury prejudice.

The Court suggests that *Rideau* v. *Louisiana,* 373 U. S. 723 (1963), controls the disposition of this case. But there we held that prejudicial publicity was so extensive that it was a denial of due process to refuse a motion for change of venue where the State had provided for venue changes as a method of ensuring an impartial jury. See La. Rev. Stat. § 15:293 (1950). Here Wisconsin has not chosen to provide that means of implementing the Sixth Amendment right in misdemeanor cases. So long as a defendant can protect his Sixth Amendment right by a motion for a new trial, I see no constitutional infirmity in the Wisconsin statute. Nor does *Irvin* v. *Dowd,* 366 U. S. 717 (1961), compel the

majority's result. There we held that a motion for a second change of venue should have been granted despite a state statute which seemingly permitted only one change. However, we carefully pointed out that the Indiana Supreme Court had previously held as a matter of state law that the statute's literal wording did not foreclose a second change of venue. 366 U. S., at 721, citing *Gannon* v. *Porter Circuit Court,* 239 Ind. 637, 159 N. E. 2d 713 (1959).

This is not a case where a State has made it impossible for a defendant to implement his right to an impartial jury trial. Wisconsin law provides for *voir dire* and continuances, and this appellant exercised his right to make peremptory challenges to jurors. In holding that appellant had no constitutional right to a change of venue in a misdemeanor case, the Wisconsin Supreme Court pointed out that he could raise the claim of denial of an impartial jury by a motion for a new trial in accordance with Wisconsin procedure. 41 Wis. 2d 312, 321, 164 N. W. 2d 266, 270 (1969). Of course it is difficult, even in a small county, to show that its population is so saturated with prejudice that no impartial jury can be selected from that group. It is likely to be especially difficult in a county as large as Milwaukee, with its population of more than one million. However difficult that may be, appellant has a right under Wisconsin law to bring forth any relevant evidence to show that the jury that tried him was not impartial. I would remand this case for a hearing on a motion for a new trial.