TAYLOR, Judge.
The appellant, Stephen Wilson, was indicted by a Macon County Grand Jury, and thereafter convicted and sentenced to twenty years’ imprisonment, for the murder of Fletcher D. Morris. The only issues raised on appeal are that the trial court erred in not granting 1) a motion for change of venue, and 2) a motion for new trial. During a pre-trial hearing, the appellant presented strong reasons why the change of venue should have been granted. However, the motion was denied, and it is that ruling that we find to be reversible error.
Not in all circumstances will a change of venue defeat the effects of pretrial publicity, but it will help assure a fair trial when the prejudicial atmosphere is limited to a particular area from which the trial can be moved.
“A change of venue is not, in present theory, a panacea to the problems posed by pretrial publicity. Its effectiveness depends not upon its ability to prevent publicity tending to generate or nurture the growth of prejudice, but upon its ability to remove a defendant from a poisoned atmosphere. Thus, where the prejudicial publicity is widespread, or of the kind likely to follow a defendant wherever he goes, change of venue is an impotent protective device. On the other hand, when the 'prejudicial publicity is rooted in circumstances peculiar to a particular community and draws its strength from only those circumstances, removal is indeed a most effective protective device.
“An examination of the cases reveals that more often than not, removal is an inherently effective protective device. Thus, writers in the field are correct in concluding that courts have failed to use venue change to its fullest possible extent in promoting the ends of justice.
“The reasons that explain this judicial hesitancy are several. Removal is capable of working an extreme dislocation in the administration of criminal justice. It is expensive and generally inconvenient, and it has excellent potential as a dilatory tactic. Further, it amounts to an admission that justice cannot be done in the forum in which the motion is made, which is a severe blow to people who pride themselves in their ability to be fair to their fellows. Finally, removal runs counter to the tradition that the administration of criminal law is primarily the concern of the community in which the crime is committed.”
Note, The Efficacy of a Change of Venue in Protecting a Defendant’s Right to an Impartial Jury, 42 Notre Dame Law. 925, 941-942 (1967). These reasons for judicial reluctance to change venue, however, are outweighed by an individual’s right to due process of law via a fair trial by an impartial jury. This is because fundamental fairness is the very heart of our jurisprudence; without fundamental fairness, the protections afforded by the Bill of Rights to all persons are effectively eviscerated. One of the duties of the judiciary *80 is to protect constitutional rights; “unfairness anywhere, in small cases as well as in large, is abhorred, is to be ferreted out, and is to be eliminated.” Groppi v. Wisconsin, 400 U.S. 505, 514, 91 S.Ct. 490, 495, 27 L.Ed.2d 571 (1971) (Blaekmun, J., concurring).
One of the rights our forefathers fought and suffered for is the United States Constitution’s guarantee to all criminal defendants of the right to a trial “by an impartial jury of the state and district wherein the crime shall have been committed.” U.S. Const, amend. VI. Thus, if an impartial jury, selected from the district wherein the crime was committed, cannot be impaneled, then to refuse the request for a change of venue is a denial of due process of law. Rideau v. Louisiana, 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963). See also Groppi v. Wisconsin, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971). The Constitution of Alabama of 1901 echoes this requirement. See Ala. Const, art. I § 6.
The Alabama Legislature has established a procedure whereby a defendant charged with an indictable offense can meet his burden of proving that he cannot receive a fair trial in the county in which the offense was alleged to have been committed. See Ala. Code § 15-2-20 et seq. Whether to grant a change of venue is generally left to the discretion of the trial court. Mathis v. State, 280 Ala. 16, 189 So.2d 564 (1966), cert. denied, 386 U.S. 935, 87 S.Ct. 963, 17 L.Ed.2d 807 (1967); State v. Ware, 10 Ala. 814 (1846); Anderson v. State, 443 So.2d 1364 (Ala.Cr.App.1983); Robinson v. State, 430 So.2d 883 (Ala.Cr.App.1983); Lokos v. State, 434 So.2d 818 (Ala.Cr.App.1982), aff’d, 434 So.2d 831 (Ala.1983). Notwithstanding such discretion, on appeal, the appellate court’s “review of the trial court ruling is to be de novo, without any presumption in favor of that ruling.” Gilliland v. State, 291 Ala. 89, 277 So.2d 901, 903 (1973). See also Malloy v. State, 209 Ala. 219, 96 So. 57 (1923); Monroe v. State, 50 Ala.App. 302, 278 So.2d 751 (1973); Ala. Code § 15-2-20 (1975). We find the following to be the facts presented by the appellant to the trial court in support of his motion for change of venue.
The deceased had worked for the appellant at the latter’s business, Wilson Ford automobile dealership, in Tuskegee, Alabama, for about six years. Shortly after the deceased’s body was discovered on Wednesday, July 21, 1982, it was rumored that the appellant had committed the murder, and that it was racially motivated. These rumors quickly caused a fervor to spread throughout the county, with the local newspaper receiving complaints from citizens complaining that the appellant was not being expeditiously arrested. A demonstration was planned for Monday, July 26, 1982, and a parade permit was obtained authorizing the demonstration to occur in downtown Tuskegee. The objective of the demonstration and parade was to cause the authorities to arrest Wilson for the murder. The city’s mayor publicly supported the planned demonstration, and also asserted that the demonstration should not be directed toward the city. The sheriff was successful in persuading the organizer of the planned demonstration to forego marching. The local paper also reported that there was an unsuccessful attempt to organize another march for the following day.
A controversy ensued between the county sheriff, who was seeking re-election at the time, his political opponents, and the mayor of Tuskegee, over the manner in which the sheriff was managing the homicide investigation, i.e., that the appellant had not yet been arrested. The mayor acknowledged that the city did not have jurisdiction over the matter because the offense had occurred outside of the city limits, and, therefore, the failure of the county sheriff to arrest the appellant was not his fault. The mayor further stated that he would have handled the matter differently. Finally, the sheriff resorted to recording a public service announcement that was broadcast throughout the county on a local radio station. As the appellant *81 correctly states in his brief, “The gist of the tape was a plea by Sheriff Amerson to remain calm and let law enforcement handle the case.”
“Good morning ladies and gentlemen, this is the Sheriff. I would like to make a statement relevant to a case pending before us at this time. And I hope by making this statement, at this point, it will help to dispel wild rumors and other statements by various parties as to the Steve Wilson case. Now, there is no need for anyone to worry or to become alarmed because the Sheriff is going to do his duty, but not based on rumors but rather facts that could be sustainable in court proceedings. I would advise that persons should be very careful in the statements which they make about a controversial case of this kind. It could set the stage for some difficult legal questions that the courts could be faced with in the days ahead.... A better idea would be for everyone to leave this to the proper authorities and it will be taken care of in due course.”
During the broadcast, the sheriff also announced that Wilson would be arrested on Thursday, July 29, 1982, the day he, Wilson, was scheduled to be released from the hospital.
Appellant Wilson also presented testimony from both black and white residents of Macon County, who stated their opinions that the appellant could not receive a fair trial in Macon County. Their respective testimony was based on what they had heard in the community. One black woman testified that she had talked to approximately 200 people in the community, and based on what she had heard, she believed that Stephen Wilson could not get a fair trial in that county. The judge asked her whether the street-talk was “[a]ny different from the way people talk about other murder trials here in the County.” She replied, “Well, with some individuals I have talked to it is different, and then with some it’s racial, that’s to be — you know, I guess that’s to be expected.” The appellant also presented 190 affidavits from both white and black residents of Macon County attesting to their belief that he could not receive a fair trial in that county.
Needless to say, the local weekly newspaper, “The Tuskegee News,” reported the incident. The articles w(jre prominently displayed on the front page of the paper, and, in one edition, the article was conspicuously positioned at the top of the front page, even above the name of the newspaper, a position journalistically reserved for only the most important news events. The editor of the newspaper testified at the change of venue hearing that the following morning’s newspaper would contain an editorial regarding the appellant’s request for a change.of venue. After reviewing the proposed editorial, and at the conclusion of the change of venue hearing, Judge James A. Avary stated:
“THE COURT: At the present time I am inclined to deny this Motion for Change of Venue, however, I understand that the newspaper comes out when? Tomorrow, or the day after tomorrow?
“GEORGE BECK [appellant’s attorney]: Thursday.
“THE COURT: If this editorial is printed, which is in draft form here, I will probably change venue. And, if anything else of any consequence appears in this edition of the newspaper, it might cause me to change the venue. I can’t stop the editor from publishing this, he can go ahead and do whatever he wants to, but if he wants to see the trial stay here in Macon County, he will throw this editorial in the trash basket. ” (Emphasis added.)
Notwithstanding the trial judge’s admonition, the editorial was published in the weekly Thursday newspaper the day after the hearing. Thereafter, the case was reassigned to a different judge, who ultimately was the trial judge, and he denied the appellant’s subsequently filed motion for change of venue.
After the appellant’s conviction, he presented additional evidence at a motion for new trial hearing that tended to show that bias and prejudice against him pervad *82 ed the county. Three witnesses testified that in 1966, Sammy L. Younge, a black activist, was killed. The appellant’s grandfather and others were tried for the murder and found not guilty. A circular was introduced into evidence that had been printed shortly after the acquittals, and it condemned the “establishment” as well as those who were the aecúsed: “The black people in this county only serve empty functions while Parker and Keever and Wilson are top guns. How long will we allow white people to control our destinies?” The witnesses testified at the motion for new trial hearing that prior to the appellant’s trial, they heard talk amongst the community that now there was an opportunity to avenge Sammy Younge’s death and get even with the Wilson family.
Based on the foregoing, we find that the record discloses that bias and prejudice against the appellant permeated the county. Even without the editorial, there was massive evidence to indicate a need for change of venue. We infer from the record that, if the judge who heard the change of venue motion had continued on this case, the change of venue motion would have been granted. We find that the court abused its discretion in failing to grant the motion for change of venue. We therefore reverse and remand this case to the trial court for further proceedings consistent with this opinion. Beecher v. State, 288 Ala. 1, 256 So.2d 154 (1971), rev’d on other grounds, 408 U.S. 234, 92 S.Ct. 2282, 33 L.Ed.2d 317 (1972); Ala.Code § 15-2-24 (1975).
REVERSED AND REMANDED.
All the Judges concur, except PATTERSON, J., who recuses.