STATE EX REL. GREEN BAY NEWSPAPER COMPANY, Terry
Anderson and Mike Smothers, Petitioners,

v.

CIRCUIT COURT, BRANCH 1, BROWN COUNTY, the Honor-
able Richard G. Greenwood, Kenneth J. Phillips, Jr.,
and the State of Wisconsin, Respondents. [Case No.
82–2244–W.]

IN the MATTER OF the FINDING OF CONTEMPT IN STATE
of Wisconsin v. Kenneth J. PHILLIPS, Jr.; Terry AN-
DERSON and Mike Smothers, Appellants,

v.

CIRCUIT COURT FOR BROWN COUNTY, the Honorable
Richard G. Greenwood, presiding, Respondent.
[Case No. 83–133–CR.]

Supreme Court

*Nos. 82–2244–W, 83–133–CR. Argued April 25, 1983.—Decided
July 1, 1983.*

(Also reported in 335 N.W.2d 367.)

For the petitioners and appellants there were briefs by *Robert W. Schaefer, John M. Thompson,* and *Trowbridge, Planert & Schaefer, S.C.,* Green Bay, and *James P. Brody, Thomas L. Shriner, Jr.,* and *Foley & Lardner,* Milwaukee, and oral argument by *Mr. Shriner.*

For the respondent, Kenneth J. Phillips, Jr., there was a brief and oral argument by *Carl R. Fenwick,* Green Bay.

For the respondents, State of Wisconsin and the Honorable Richard G. Greenwood, the cause was argued by *Chris Heikenen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Amicus Curiae briefs were filed by *Diane S. Gutmann, Brady C. Williamson* and *La Follette, Sinykin, Anderson & Munson,* Madison, for Wisconsin Newspaper Association and Wisconsin Freedom of Information Council; and, for Reporters Committee for Freedom of the Press.

DAY, J. Case No. 82–2244–W is a review of a decision of the court of appeals which denied a request by the petitioners for a supervisory writ to prohibit the enforcement of a trial court order requiring an *in camera* disclosure of the sources of news articles written by Terry Anderson and Mike Smothers (both will be referred to in this opinion as the reporters), reporters for the Green Bay Press-Gazette. Case No. 83–133–CR is an appeal from a contempt order of the Circuit Court for Brown County, Richard G. Greenwood, Judge. The reporters petitioned this court to bypass the court of appeals in that case. The petition for review in Case No. 82–2244–W and the petition to bypass in Case No. 83–133–CR were granted by this court on February 15, 1982 and the cases were consolidated for review.

The issue presented on review[1] is: Did the trial court, under the facts of this case, err in ordering an *in camera*

---

[1] In this court's order granting review in this case, the court directed the following four issues be briefed:

"(1) What should be the appropriate procedural mechanism for determining when and whether news reporters will be compelled to reveal the identities and the substance of their conversation with confidential sources to whom they have spoken in the preparation of news articles, assuming that there has been no waiver of their journalist's privilege?

"(2) When an accused in a criminal case and a news reporter or reporters have an apparent conflict between their respective Sixth and First Amendment rights, which party or parties shall have the burden of proof in showing that the material sought to be discovered either is or is not relevant to the accused's defense and that the material sought to be discovered either can or cannot be obtained by any less intrusive method and that the accused

inspection and requiring the reporters to reveal the identity of their news sources to the trial judge?

We conclude the judge erred in requiring *in camera* disclosure of the reporters' sources. Because the criminal defendant seeking *in camera* disclosure of the sources has failed to make a *prima facie* case for the use of compulsory process, we determine that the trial court's order of contempt cannot stand. We therefore reverse that order.

These cases arose as the result of news articles written by the reporters in the summer of 1982. The articles included information regarding the conduct of a John Doe investigation into the death of David Moureau on October 17, 1981.

As the result of the John Doe investigation, the Brown County District Attorney, Peter J. Naze, charged Robert S. Vertz (Vertz) with first-degree murder in connection with the death and Kenneth J. Phillips, Jr. (Phillips) with aiding and abetting first-degree murder. As part of their preparation for trial on these charges, both of these individuals filed motions for a change of venue. In connection with these motions, Judge Greenwood ordered all the news media in the area to furnish to defense counsel transcripts of broadcasts and copies of newspaper articles on the Moureau murder and John Doe investigation.

---

either does or does not have a legitimate need to see and use the material in his defense?

"(3) Did the trial court, under the facts of the instant case, err in ordering an *in camera* inspection and requiring the reporters to reveal the identity of their news sources to the trial judge?

"(4) Was it appropriate for the trial court to impose contempt sanctions on the reporters under the circumstances of this case?"

Issue three is considered on review. Issues one and two are addressed within the context of whether the trial court erred in ordering *in camera* disclosure of the reporters' sources. Issue four is not addressed because of our conclusion that the subpoenas in this case should be quashed.

The Green Bay Press-Gazette,[2] employer of the two reporters involved in this case, complied with the order and furnished counsel with copies of articles written in connection with the murder and John Doe. Some of these articles, written by the two reporters, contained information about the John Doe and noted that the information was obtained from unnamed "sources."[3]

[2] The Green Bay Press-Gazette is owned by Green Bay Newspaper Company.

[3] The date, title and relevant text of these articles is set out below:

"July 8, 1982: '*Murder probe figure arrested for assault.*' A 34-year-old Green Bay man, who sources say has been a key figure in a John Doe murder investigation, was arrested today on an unrelated sexual assault charge.

"Kenneth J. Phillips, Jr., 34, who a 17-year-old girl accused of sexually assaulting her, will appear on that charge later today in Brown County Circuit Court.

"Sources said they don't know if there is any connection between the John Doe investigation into the unsolved murder of David Moureau and the sexual assault charge . . .

"Sources said Phillips is a key figure in the closed-door John Doe hearing on the shooting death last fall of Moureau that began Tuesday.

"Sources said Phillips has not yet been questioned in the John Doe hearing. Sources didn't know what his role would be in the hearing . . .

"Sources said police were unable to locate Phillips until he returned home early today after a week in South Dakota.

"July 9, 1982: '*Possible John Doe witness jailed.*' Kenneth J. Phillips, Jr., reportedly a key figure in a John Doe murder investigation was locked in jail Thursday when his bond on a burglary charge was revoked . . .

"While the [sexual assault] charges were being prepared, the closed-door John Doe hearing into the shooting death last fall of David Lee Moureau that began Tuesday was postponed Thursday.

"It was not officially known what role Phillips will play in the Doe hearing, but sources said he has not yet testified."

July 13, 1982: '*Possible Doe figure to be tried*'

"A judge today ordered Kenneth J. Phillips, Jr., reportedly a key figure in a John Doe murder investigation, to be tried on two sexual assault charges . . .

At Phillips' request, Judge Greenwood subpoenaed the reporters to appear at a pretrial hearing with their notes on the articles they had written to give testimony as to

"Sources said Phillips is a key figure in a closed-door John Doe hearing into the shooting death last fall of David Lee Moureau.

"August 6, 1982: *'Revenge cited as Moureau Murder motive.'*

"Once he had Phillips behind bars on other charges, District Attorney Peter Naze postponed the Doe hearing until Tuesday. A source said it then resumed 'hot and heavy' and once again in secret. It culminated with subpoenas issued for eight persons to testify this week, the source said . . .

"Sources have said Phillips [brother Ralph] had been in protective security in Chicago since the probe began."

In addition to the above articles, additional articles were submitted to the trial judge on November 2, 1982, and were included in the trial court's supplemental decision issued November 19, 1982. They read in relevant part:

"June 21, 1982: *'Slaying may prompt Doe hearing.'*

"Brown County prosecutors reportedly are preparing to launch a secret John Doe hearing to collect information on the shooting death last fall of David Lee Moureau.

"Sources have said the hearing, in which possible suspects or witnesses to the shooting would be asked to testify to determine if any charges can be brought, may be held late this week . . .

"The sources have asked not to be named."

"June 26, 1982: *'Doe hearing set next week.'*

"Sources said the secret John Doe hearing, which District Attorney Peter Naze hoped to hold before a judge this week, will be held by Friday. The sources who asked not to be named, could not specify the date.

"July 6, 1982: *'Testimony begins in murder hearing.'*

"Sources said the investigation and hearing centers on two persons recently arrested for a burglary in the county.

"One is expected to testify against the other and has been given 24-hour protective custody, the sources said.

"July 10, 1982: *'John Doe hearing a mystery.'*

"Sources have said Phillips, 1950 Basten St., is a key figure in the murder investigation. . . .

"July 7, 1982: *'Security tight at Doe hearing.'*

"Another source said, 'security is a life and death matter in this case. The witnesses are in danger of their lives if the suspect gets hold of them.' The source asked not to be named."

the sources of the articles. The reporters and the newspaper filed a motion to quash the subpoenas on the grounds that the reporters had promised confidentiality to their sources and requiring disclosure of the identities of the sources would violate the reporters' qualified privilege of nondisclosure.

Judge Greenwood held several hearings on these and other motions. At one of the hearings, each reporter was called to testify. They testified in very general terms as to the number of sources for their articles. From their testimony it appears that between four and seven sources were used by the two reporters. The reporters also testified that all but one of the sources had been used before by them and that their news articles contained all of the substantive information that had been passed to them by the sources.

Judge Greenwood issued his decision denying the motion to quash on November 19, 1982, and ordered the reporters to appear before him in an *in camera* hearing. The purpose of the hearing was to take the reporters' testimony as to the identities of their sources so as to make a determination as to whether that information should be disclosed to Phillips.

The reporters appealed Judge Greenwood's order[4] and filed a petition for a supervisory writ. The court of appeals dismissed the appeal from the "final" order, denied the petition to appeal the nonfinal order and denied the petition for a supervisory writ. The latter decision was made on the grounds that Judge Greenwood's decision had been correct.

The reporters sought review of the court of appeals denial of the petition for a supervisory writ.

On January 17, 1983, the reporters appeared at an *in camera* hearing before Judge Greenwood. When asked

---

[4] The reporters sought review of the order both as a final order and as a nonfinal order.

to name their sources for the news articles, each reporter declined to do so. The *in camera* hearing was then moved to open court where Judge Greenwood again asked each reporter if he would be willing to name his sources in an *in camera* hearing. When each refused, he found each in contempt of court and imposed a fine of $500 and confinement of no more than thirty days in the county jail.

The reporters appealed this order and petitioned this court to bypass the court of appeals. That petition was granted and the case was consolidated with the review of the court of appeals decision denying the supervisory writ.

Since *State v. Knops,* 49 Wis. 2d 647, 183 N.W.2d 93 (1970), this court has recognized a qualified constitutionally-based journalist's privilege to refuse to disclose sources of information received in confidence. In *Zelenka v. State,* 83 Wis. 2d 601, 617, 266 N.W.2d 279 (1978), this court held that the basis for that privilege rests in Art. I, sec. 3 of the Wisconsin Constitution which reads: "Every person may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press."

The privilege recognized in *Knops* and *Zelenka* is not absolute. Rather, to determine whether the privilege will in any given situation protect a journalist from being required to disclose sources of information received in confidence requires a balancing of the factors supporting the nondisclosure privilege against the societal values favoring disclosure. *Zelenka,* 83 Wis. 2d at 619.

Although this court has recognized the existence of a journalist's privilege, it has not had occasion to consider what procedural mechanisms should be adopted to facilitate a determination of whether in a given situation a journalist may properly invoke the privilege to prevent

the disclosure of his confidential sources. This case raises the issue.

For a person to seek to invoke the privilege, there must be an initial showing, by affidavit or otherwise, that the person is one to whom the privilege should extend.[5] In *Zelenka*, this court noted that *Knops* held that a *journalist* has a qualified privilege to refuse to disclose sources of information received in *confidence*. 83 Wis. 2d at 616. In the present case, we are not required to determine what activities constitute "journalism" or allow a person to hold himself out as a journalist for purposes of the privilege. It is not disputed that both Anderson and Smothers, as reporters for the Green Bay Press-Gazette, fall within that definition. Further, since both reporters testified that the information they received from their sources was given in confidence, that requirement is also satisfied. It is also significant that, as both reporters testified, they have kept these confidences by not revealing the sources to anyone with the possible exception of their immediate supervisor at the newspaper.

Once a person has demonstrated entitlement to the journalist's qualified nondisclosure privilege, the question becomes one of how should that privilege be weighed against a defendant's right to compulsory process to obtain witnesses on his behalf. This court has recognized that a criminal defendant does not have an unqualified right to subpoena witnesses. In *State v. Groppi*, 41 Wis. 2d 312, 323, 164 N.W.2d 266 (1969), reversed on other grounds, 400 U.S. 505 (1971), it was held that "a defendant suffers no constitutional deprivation when he is limited to subpoenaing witnesses who can offer relevant and material evidence on his behalf." For the

---

[5] *See Lamberto v. Bown*, 326 N.W.2d 305, 309 (Iowa, 1982); *Matter of Farber*, 78 N.J. 259, 394 A.2d 330, 338 (1978).

constitutional right to compulsory process to be invoked, a defendant must, if the subpoena is challenged, show there is a reasonable probability that the subpoenaed witnesses' testimony will be competent, relevant, material and favorable to his defense.[6] This is true whether the motion to quash the subpoena is made by a person seeking to exercise a privilege against testifying or by a person claiming no such privilege but who does not want to be called as a witness.

If the motion to quash is made by a person claiming the journalist's privilege, it may be difficult for a defendant to offer much proof as to what the subpoenaed witnesses' testimony will be. This is particularly true where, as here, there is no suggestion that the subpoenaed witness has directly witnessed or has first-hand knowledge of the crime for which the defendant is charged. Nonetheless, before the motion to quash is denied, a criminal defendant must offer some proof, beyond mere speculation, that there is a reasonable probability that the subpoenaed witnesses' testimony will be competent, relevant, material and favorable to his defense.

This does not mean that subpoenaed witnesses' testimony must be directly relevant, material and favorable to the defendant's defense. The defendant's right to compulsory process was intended to permit the criminal defendant to request governmental assistance in obtaining exculpatory evidence.[7] *Palermo v. United States,* 360 U.S. 343, 362–63 (1959) (Brennan, J., concurring). If the defendant can show a reasonable probability that the subpoenaed witnesses' testimony will lead to competent, relevant, material and exculpatory evidence, such a show-

---

[6] See cases cited in Westen, *Compulsory Process II,* 74 Mich. L. Rev. 191, 241 (1975) (hereinafter *Compulsory Process II*).

[7] *See* Westen, *The Compulsory Process Clause,* 73 Mich. L. Rev. 71, 123 (1974) (hereinafter *Compulsory Process I*).

ing is sufficient to require a denial of the motion to quash. The person claiming the privilege may offer evidence rebutting the defendant's proof. The defendant's showing must be by a preponderance of the evidence or the subpoena will be quashed.

If the defendant has offered sufficient unrebutted proof that a subpoenaed witness' testimony will be competent, relevant, material and exculpatory or will lead to such evidence, normally a subpoena will be allowed to stand and the witness required to testify. *Groppi*, 41 Wis. 2d at 323. However, where the witness makes a claim of journalist's privilege, an additional step is necessary before the subpoena will be enforced and the journalist required to disclose his sources in an *in camera* hearing. That added step is to require the defendant to make a showing to the trial court by a preponderance of the evidence that he has investigated other sources for the kind of information he seeks and there are no reasonable and adequate less intrusive alternative sources where he can obtain the information. *Lamberto*, 326 N.W.2d at 308. Once the defendant has made such a showing, the person asserting the privilege may rebut this claim.

There are two rationales for this final step before requiring *in camera* inspection. The first is to prevent "fishing expeditions" by the defendant who may seek to use the journalist as an investigative tool. *Farber*, 394 A.2d at 338–39. The second is to provide protection for the societal interest which underlies the journalist's privilege—encouraging the free flow of information. *Knops*, 49 Wis. 2d at 658. However, even though society does have that interest, it is not so strong that it requires protection of the journalist's sources in the face of all attempts to force their disclosure. We agree with the Supreme Court of Virginia in *Brown v. Common-*

*wealth,* 204 S.E. 2d 429, 431, (1974), that the journalist's privilege "is a *privilege* related to the First Amendment and not a First Amendment *right,* absolute, universal, and paramount to all other rights." (Emphasis in original.) We believe this conclusion is equally applicable to the journalist's privilege under the Wisconsin Constitution.

Therefore, if the defendant shows the trial court by a preponderance of the evidence either that he has investigated all reasonable and available alternative sources for the competent, relevant, material and exculpatory information or that no such sources exist, an *in camera* inspection should be ordered. The trial court's order will not be overturned on appeal unless an abuse of discretion is shown.

At the *in camera* hearing, the journalist will be required to disclose his sources to the court. Once the sources have been revealed to the court, the court must make a new determination as to whether the sources can provide competent, material, relevant and exculpatory evidence to the defendant. If the sources and the information they possess meet this test, one additional test should be performed. The trial court should make a determination as to whether the evidence is necessary to the defense. Information is necessary to the defense if it tends to support the theory of defense which the defendant intends to assert at trial. *See State v. Outlaw,* 108 Wis. 2d 112, 135, 321 N.W.2d 145 (1982) (Callow, J., concurring) (relating to the informer privilege under sec. 905.10(1), Stats.).

Once the trial judge is satisfied that the information meets the above criteria, he should require its disclosure to the defendant and to the state. These determinations are left to the discretion of the trial court and will not be overturned unless an abuse of discretion is demonstrated. *Outlaw,* 108 Wis. 2d at 128, *State v. Sandstrom,* 224 Kan. 573, 581 P.2d 812, 816 (1978). We turn to

the facts of the case before us to determine whether the trial court's order requiring *in camera* disclosure of the journalist's sources was proper.

In order for Phillips to obtain *in camera* disclosure of the reporters' sources, he must offer proof that there is a reasonable probability the subpoenaed witnesses' testimony is or will lead to competent, relevant, material and exculpatory evidence. Because, as the court in *Farber* noted, "It is not rational to ask a judge to ponder the relevance of the unknown," 394 A.2d at 338, the defendant's showing need not be detailed or specific. However, it must rest on more than mere speculation.

In this case, the trial judge found and all the parties agreed that the sources fall within three distinct categories: 1) a representative of the state, such as a police officer, close to the John Doe proceedings; 2) a witness at the John Doe proceeding; or 3) other people, not John Doe witnesses or representatives of the state, who have independent information regarding the facts of the crime or the identity of the accused.

The defendant argues that if the sources fall within any of these three categories, that is sufficient to require *in camera* disclosure of the sources.

The defendant first argues that if any of the sources can reasonably be believed to be representatives of the state, he is entitled to have those sources revealed to the trial court *in camera*. If some or all of the sources actually turn out to be representatives of the state, the defendant argues that those sources should then be disclosed to him.

As the basis for this argument, defendant relies on *Briggs v. State,* 76 Wis. 2d 313, 251 N.W.2d 12 (1977). In *Briggs,* this court held that for purposes of a change of venue motion, the participation of the state in promulgating adverse publicity was relevant. The defendant argues that if a representative of the state is a source

for the articles written by the reporters, this amounts to participation in adverse publicity. He argues he should be informed of this participation so that he can note this participation in his change of venue motion.

While it is true that the participation of the state in promulgating adverse publicity may be relevant to a decision on a change of venue motion, that relevancy alone does not end the inquiry as to whether a subpoena should be issued to produce that information. The defendant has a right to compulsory process where he can offer proof that the information sought will be competent, relevant, material and exculpatory. Here, at a minimum, we conclude that the fact that the state may have participated in the pretrial publicity in this case is not material.

Even though evidence may be relevant, a defendant has no right to produce it if the impact of the exclusion of the evidence will be too insignificant to have any bearing upon the question to which the evidence goes.[8] *Groppi,* 41 Wis 2d at 322–23. Here, even assuming the state participated in the pretrial publicity, that fact would have no effect upon the change of venue question. The articles here were not inflammatory. They were straightforward and objective. There was no "editorializing" nor did they attempt to influence public opinion against the defendant.

The information in the articles which was attributed to unnamed sources generally went to the conduct of the John Doe proceeding and the fact that Phillips was a "key figure" in the probe. This information does not rise to the level of "adverse publicity" so that it would be found relevant to the change of venue question under *Briggs.* However, assuming the information attributed to unnamed sources or otherwise contained in the news

---

[8] *Compulsory Process II,* 74 Mich. L. Rev. at 214.

articles to be adverse, we conclude that any participation by a representative of the state in this pretrial publicity was so minimal and unprejudicial to the defendant that the disclosure of a state "source" would not be material to the defendant's change of venue motion.

Therefore, any of the defendant's proof that the sources of the reporters' articles might be representatives of the state would not be sufficient to support the denial of a motion to quash a subpoena because knowledge of those sources would not be material to the defendant's case.

The defendant next asserts that some of the reporters' sources might be John Doe witnesses who, if they spoke to the reporters, would have violated an oath of secrecy regarding the prceedings. The defendant argues that, if the oath was violated by a John Doe witness, such a violation would be relevant on the question of the witnesses' credibility. The trial judge concluded on this question that this information "would be absolutely crucial to the defendant in the preparation of the defense."

We disagree. The reporters correctly point out that, even if a John Doe witness did violate his oath of secrecy in disclosing information to the reporters, under sec. 906.08(2), Stats. 1981–82,[9] evidence as to such a violation would not be admissible. *See McClelland v. State,* 84 Wis. 2d 145, 158–160, 267 N.W.2d 843 (1978). Evi-

---

[9] Section 906.08(2), Stats. (1981–82) reads:

"906.08 **Evidence of character and conduct of witness . . . .**(2) SPECIFIC INSTANCES OF CONDUCT. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crimes as provided in s. 906.09, may not be proved by extrinsic evidence. They may, however, subject to s. 972.11(2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness."

dence that an individual violated a secrecy oath in a John Doe proceeding would not be probative of truthfulness or untruthfulness. Therefore, under sec. 906.08(2), inquiry could not be made into this subject on cross-examination.

A defendant has no constitutional right to compulsory process to obtain information that is not material. Evidence which is inadmissible at trial and which has not been shown to have a reasonable probability of leading to competent, relevant, material and exculpatory evidence is clearly immaterial to the defendant's defense

We conclude that to the extent the defendant has offered proof that the reporters' sources might be individuals involved in the John Doe proceedings who violated their oaths of secrecy and who may be called by the state as witnesses at the defendant's trial, such proof is insufficient to support the denial of a motion to quash the subpoena.

Finally, the defendant argues that the reporters' sources may be persons other than representatives of the state or John Doe witnesses who may have independent information regarding the facts of the crime so that they might be able to give exculpatory testimony at the defendant's trial. If the defendant has offered unrebutted proof so that the trial judge could conclude by a preponderance of the evidence that there was a reasonable probability that at least one of the reporters' sources knew something about the facts of the crime and might be able to give exculpatory evidence at trial, then the trial court would be justified in denying the motion to quash.[10]

The defendant has a constitutional right to discover the existence of potential witnesses.[11] This right includes

[10] The defendant would have to make a showing that he had investigated other sources for this information and there are no reasonable and adequate less intrusive alternative sources for the information before the trial court could order *in camera* disclosure of the source.

[11] *Compulsory Process I*, 73 Mich. L. Rev. at 120.

the right to use compulsory process to obtain information which will lead to competent, relevant, material and exculpatory evidence. Information, such as the names of the reporters' sources, which might lead to exculpatory evidence would meet the requirements for compulsory process to issue. Because a journalist's privilege of non-disclosure is claimed, before a subpoena would be enforced the procedure set out herein would have to be followed.

In the present case, the defendant has not yet made a showing that there is a reasonable probability that the reporters' testimony will lead to competent, relevant, material and exculpatory evidence from witnesses apart from representatives of the state or witnesses at the John Doe. The trial judge apparently recognized this as well. He specifically found that:

"There is a high probability that the witness-sources at issue in this case are in some way connected to the John Doe investigation. This nexus exists because reason and logic compel the conclusion that the only sources which would have future information and knowledge about the prospective and active John Doe would have to come [from] within the John Doe hearing itself or from people who were peculiarly privy to the conduct of the John Doe."

The reporters testified that their articles contained everything substantive that their sources had revealed to them. The news articles involved in this case contain no suggestion that the unnamed sources have any knowledge whatsoever about the crime for which the defendant is charged. Rather, as Judge Greenwood recognized, they merely reflect a knowledge about the conduct of the John Doe proceeding. Therefore, the articles by themselves do not constitute a sufficient showing that there is a reasonable possibility the reporters' sources might lead to exculpatory evidence. In addition, nothing in the

testimony of the reporters at the hearing on the motion to. quash the subpoenas suggested that any of their sources might be able to provide exculpatory evidence.

Because the defendant Phillips has not made a showing, sufficient to require the denial of the reporters' motion to quash, the trial court erred in denying the motion and ordering *in camera* disclosure of the reporters' sources.

Since we determine that Phillips failed to make a *prima facie* case for the issuance of the subpoenas, the trial court's finding of contempt was not proper. We therefore reverse the contempt order entered by the court.

*By the Court.*—Decision of the trial court in Case No. 83–133–CR is reversed; decision of the court of appeals in Case No. 82–2244–W is reversed and cause remanded with directions for the trial court to quash the subpoenas.